NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ERNEST OH,** | |
| Plaintiff, | Civil Action No. 04-CV-0020 (PGS) |
| v. | |
| **ENGELHARD CLCL, CO.,** | |
| Defendant. | |

**SHERIDAN, U.S.D.J.**

On January 5, 2004 plaintiff filed a complaint against defendant, alleging that he was terminated both because he was (1) over the age of 40 in violation of 29 U.S.C. § 621, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA") and (2) because of his national origin South Korean, in violation of 42 U.S.C. § 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendants now move pursuant to Fed.R.Civ.P. Rule 56 to dismiss plaintiff's complaint in its entirety.

*Facts*:

Plaintiff was born in South Korea on September 29, 1949[1], he immigrated to the United States and gained citizenship in 1976. Plaintiff applied for and was hired as the sole air conditioning service employee (ACSE) at Engelhard Carteret facility in June of 1999. The ACSE job description

---

[1]Plaintiff is unsure as to exact year of birth, it is either 1942 or 1949, however pursuant to either date of birth plaintiff would fall within the category of the ADEA.

included, among other things, operating and maintaining of air conditioning units of various sizes, performing repairs and adjusting units. He was responsible for three boilers, approximately 40 rooftop air conditioning units, 4 chillers, air handlers, fans with supporting duct work, and about 60 compressors for air conditioning units. At the time of his hiring, plaintiff joined the United Automobile, Aerospace & Agricultural Implement Workers of America Union.

Plaintiff worked for three supervisors while employed by the defendant: (1) Mr. Fischetti born on April 23, 1938, (2) Jesus Vilca born on April 22, 1952; and (3) Hoffman Murcia born in Columbia on June 22, 1955. None of these individuals have the authority to suspend or terminate plaintiff. The only individuals with such authority are Sheila Chickene, Operations Manager, and John O'Toole, Human Resources Manager.

During his employment plaintiff received a number of warnings regarding his job performance from various supervisors.  The incidents are:

\*         January 26, 2001 - Vincent Morando, a supervisory employee born in the Phillippines issued a warning to plaintiff for improperly closing a valve on a water pipe that fed the cooling water for a furnace. Plaintiff admits to shutting the value but disputes defendants assertions that such action could have caused significant damage to the furnace.

\*         June 7, 2001 - William Hansen, a management employee (born on April 8, 1946) cited plaintiff for failing to pay for coffee he consumed at the employee cafeteria (plaintiff states that he thought that the coffee was free).

\*         December 10, 2001 - Hoffman Murcia, a supervisor, cited plaintiff for two reasons. First, plaintiff recommended replacement of an air conditioning unit which management later found to be unnecessary; and secondly, plaintiff failed to keep a unit in proper working order due to his

2

failure to replace a missing foot bolt.

\*        March 22, 2002 - Mr. Murcia again cited plaintiff for failure to properly maintain a unit located in the assay lab.  This unit was low on refrigerant, and the unit's compressor burned out, and as a result defendant was required to replace a unit at a cost of $11,000.00.

\*        In the same month as above, plaintiff was accused of spraying another employee with oil.  Mr. Murcia brought the incident to the attention of his supervisors, Mr. O'Toole and Ms. Chickene.

\*        Based upon the written warnings, management suspended plaintiff during an investigation of the oil spraying incident. Thereafter, on April 8, 2002,  Mr. O'Toole met with plaintiff advising him that he would not be terminated, but that Mr. Oh would be required to attend and complete an air conditioning workshop.

\*        During June 2002, Mr. Murcia cited plaintiff for failing to diagnose and correct a leak in the security office's air conditioning unit, as a result of this failure, defendant was required to replace the unit's compressor. Plaintiff was also cited for failing to address issues with the ICP room's air conditioning unit.

On June 27, 2002, and July 1, 2002 Mr. Murcia forwarded two memorandums detailing plaintiff's unsatisfactory performance during the period of June 21, 2002 to July 1, 2002 to Ms. Chickene and Mr. O'Toole.  Thereafter, on July 2, 2002, Mr. O'Toole met with plaintiff, Mr. Williams and Mr. Gabriel,  his union representatives. At this time, Mr. O'Toole decided to terminate plaintiff based upon poor performance.  On July 8, 2002, Mr. Williams filed a grievance on behalf of plaintiff requesting plaintiff's reinstatement. Sometime in mid-July, a management committee of Engelhard heard the grievance as required by the Collective Bargaining Agreement. The termination

3

was upheld.  As a result, the union initially advised defendant that the grievance would be appealed to an arbitrator; but on September 13, 2002, the union withdrew the grievance because the union concluded that plaintiff was partially responsible for the air conditioning repair and maintenance problems during his employment.  Being upset, Plaintiff filed a charge against the Union with the National Labor Relations Board ("NLRB") on September 25, 2002. The NLRB, on November 27, 2002,  informed plaintiff that they would not be prosecuting the complaint.

At some point, Plaintiff filed a claim with the New Jersey Division of Civil Rights (DJDCR) alleging discrimination and harassment by Mr. Murcia due to slurs about his national origin and age.  According to Mr. Oh, Mr. Murcia referred to him as a "f------ Korean" and "old man" frequently.  In addition, Mr. Murcia mocked his accent.  More particularly, his September 15, 2003 letter to the NJDCR asserted in pertinent part,

> "From the very beginning, Mr. Murcia was untrusting of people and consistently used inappropriate language and profanities in the workplace . . .  Mr. Murcia clearly discriminated in his comments to me by always calling "Old Man" and continually mocking my accent. Everybody was well aware of my age, being that I was 60 years old, but I have a name and being consistently labeled as the "Old Man" singled me out because of my age and made my work situation quite uncomfortable. . . . . My efforts to no avail, and it was clear to me that Mr. Murcia  disliked me because of my ethnicity and age, and did much to find fault with my work. . . . . The reason for my dismissal and termination from Engelhard-CLAL was entirely based on Mr. Hoffman Murcia's dislike of me because of my ethincity and age not because of any poor work performance."

This discrimination charge was unexpected by Engelhard because plaintiff never complained to any supervisor prior to the filing of the NJDCR complaint about such age or ethnic references. NJDCR found that it was unable to conclude that defendant violated the New Jersey Law Against Discrimination, and forwarded a Notice of Rights letter.

I.

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) *quoting Anderson*, 477 U.S. at 255.

To survive a motion for summary judgment, the evidence must be " 'sufficient to convince a reasonable fact finder to find all of the elements of [the] prima facie case.' *Connors v. Chrysler Fin., Corp.*, 160 F.3d 971, 973-4 (3d Cir. 1998) *quoting Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d. Cir. 1997) A plaintiff does not need to produce compelling evidence or conclusive proof that the adverse employment decision resulted from age discrimination. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) Rather he may point to sufficient age difference between himself and his replacement such that a fact finder can reasonably conclude that the employment decision was made on the basis of age. *Maxfield v. Sinclair Intern'l*, 766 F.2d 788, 792 (3d Cir. 1985) *cert denied* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1985)

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey*

*Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48.

II.

It is well founded that the *McDonnell Douglas* burden shifting analysis applies to both ADEA and Title VII claims. *McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 802-04 (1973); *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir.2000). In this case, defendant concedes two of the elements of the burden shifting analysis are met, plaintiff was a member of a protected class (over forty and Korean (Asian)), and plaintiff was terminated. *Thoman v. Philips Medical Systems,* 2007 WL 203943, *6 (D.N.J. Jan. 24, 2007); *Verdin v. Weeks Marine Inc.*, 124 Fed. Appx. 92, 95 (3d Cir. 2005); *Warner v. Federal Express Corp.*, 174 F.Supp.2d 215, 219 (D.N.J. 2001).With regard to the first point of contention, defendant contends that plaintiff is unqualified due to his substandard job performance which caused his firing. Defendant argues that plaintiff cannot establish the other two elements of the prima facie case. In its view, Mr. Oh was not qualified for the position and he was not replaced by an individual which would permit a reasonable inference of discrimination pursuant to either ADEA or Title VII.

6

In response, plaintiff asserts that defendant misconstrues this standard. To meet the "qualification" element, plaintiff must merely demonstrate that he was performing the job. *Zive v. Stanley Roberts Inc.*,182 N.J. 436 (2005). To that end, plaintiff holds the job of ACSE, and plaintiff has substantial specific experience related to air conditioning maintenance over the course of his career. Giving all reasonable inferences to the plaintiff, this satisfies the qualification test. *Edwards v. Schlumberger-Wells Services, a Div. F Schlumberger Tech*., 984 F.Supp. 264, 278 (D.N.J. 1997) (plaintiff's burden in presenting a prima facie case is not an onerous one); *Tzannetakis v. Seton Hall University*, 344 F.Supp.2d, 438 (D.N.J. 2004), (defendant asserted that plaintiff was not qualified for the position as his did not perform certain duties, the court held that failing to perform duties was distinct from not being capable of performing duties, as such, plaintiff based on his resume and experience established his was qualified for the position).

Defendant further avers that plaintiff fails to establish the fourth prong of a prima facie case. More specifically, plaintiff has failed to establish that his replacement was either sufficiently younger to permit a reasonable inference of age discrimination or that, based on national origin, nonmembers of the protected class were treated more favorably. Defendant contends that it did not replace the plaintiff but outsourced the function. In RIF cases the fourth prong is admittedly relaxed but still relevant. *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 250 (3d Cir. 2004); *Larrison v. Lucent Technologies Inc.*, 2004 WL 3178270, *6 (D.N.J. Aug. 20, 2004). *Healy v. New York Life Ins., Co.*, 860 F.2d 1209, 1214 (3d Cir. 1988). More germane to the analysis here is a recent Third Circuit case in which it was held that the fourth element is not required to be shown when the "evidence is adequate to create an inference that an employment decision was based on a illegal discriminatory criterion." *Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 356 (3d Cir. 1999). Mr. Oh asserts that

7

his immediate supervisor, Mr. Murcia repeatedly and consistently made discriminatory comments, regarding his age, i.e., morphing Oh into "Old Man" and referring to him as a "f------ Korean." In light of same, and giving plaintiff all reasonable inferences, he has established a prima facie case.

Pursuant to *Mc Donnell Douglas*, upon showing a prima facie case, the burden shifts to Defendant to demonstrate that plaintiff was terminated for a legitimate and nondiscriminatory reason. In this case, Engelhard argues that plaintiff's dismissal was premised on poor performance. Defendant points to the numerous warnings given to plaintiff about his performance. Generally, such a showing is sufficient. *See, Hutchins v. UPS*, 2006 U.S. App. LEXIS 19885, *11 (3d Cir. 2006). In light of the many warnings, Engelhard has demonstrated that Mr. Oh was terminated for non-discriminatory reasons.

The plaintiff then may defeat the alleged non-discriminatory reason if he can show it is merely "pretext for discrimination." *Thoman,* 2007 WL 203943, *7; *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993). To satisfy this burden the plaintiff must produce evidence either direct or circumstantial from which a reasonable jury could conclude that the defendant's explanation is incredible. *Id.* The plaintiff must present evidence from which a "fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Horvat v. Forbes Reg'l Hosp.*, 2006 U.S. App. LEXIS 14490 at *5-6. Stated another way, plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employers' proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.' *Warner,* 174 F.Supp.2d at 222;

*citing Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Plaintiff must do more than just argue that defendant's explanations should not be believed. Evidence must be supplied that raises a doubt as to the credibility of defendant's stated reason for terminating plaintiff.

To meet this burden, Mr. Oh argues that Mr. Murcia lacked the qualifications and experience to properly evaluate him, and together with his derogatory statements about Oh's age and race, there is sufficient evidence that an impermissible discriminatory motive was the real reason for his termination. The Court is unconvinced. Defendant conclusively substantiated plaintiff's poor performance. Upper management of Engelhard made the decision to terminate, not Mr. Murcia. There is no evidence of discriminatory actions by Mr. O'Toole. In addition, Mr. Oh never informed management that Mr. Murcia had treated him in an impermissible manner. There is no evidence that Mr. O'Toole knew or others at Engelhard permitted the alleged offensive conduct to continue.

While plaintiff disputes the written warnings, Mr. Oh's dispute amounts to nothing more than a difference of opinion regarding his performance. Disagreements regarding an employer's business judgment cannot suffice to establish a claim for discrimination. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 468 (3d Cir. 2005) *Healy*, 860 F.2d at 1216; *Keller v. Orix Credit Alliance Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997). Despite these allegations plaintiff has not come forward with any evidence beyond his own assertions that his subpar job performance was not the reason for his termination. Looking at the totality of the circumstances, including the lack of any discriminatory intent on the past decisionmaker (O'Toole), the abandonment of the grievance by the Union, and the failure to inform the decisionmaker of Mr. Murcia's comments prior to his NJDCR complaint, plaintiff has not presented evidence adequate to create an inference that his termination was based on discrimination due to age or national origin. In a recent case in this Circuit the defendant utilized

9

performance reviews and scored them to determine whether employees should be terminated. The plaintiff argued the process was mere pretext for an underlying discriminatory intent. The Court held that plaintiff failed to demonstrate, "any weakness, implausibilities, inconsistencies, incoherencies, or contradictions," in defendant's stated reason that could allow the Court to conclude that the proffered explanation for termination was "unworthy of credence." *Morris v. Cornell & Co.*, 2006 WL 2376742, *4 (D.N.J. Aug. 16, 2006). Similarly, Mr. Oh has failed to come forward with any evidence to rebut the proffered reasons, inadequate job performance, as documented by several supervisors. As a result, his claims for ADEA and Title VII are dismissed[2].

**Hostile Work Environment**

Defendant contends that its first notice of the hostile work environment claim is this motion for summary judgment. Plaintiff counters that a liberal reading of his complaint (which attached Oh's letter to NJDCR) is sufficient to support a hostile work environment claim. As a result of the controversy, the pleading must be reviewed. At that outset, the Complaint is vague. At the time of filing, plaintiff represented himself. Subsequently, he retained counsel; but counsel never moved to amend the pleading. The Complaint is a form that the clerk's office makes available to "pro se" plaintiffs who allege discrimination. In such form complaints, a plaintiff merely checks off a box on the form complaint. Here, plaintiff checked off race, national origin, and "other acts." Plaintiff argues that other acts is broad enough to incorporate hostile work environment claims. The Court is unimpressed with that argument; however, plaintiff attached his NJDCR letter dated September

---

[2] Plaintiff's action for wrongful termination fails for the same reason. See generally, *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1066 (3d Cir. 1996); *Mosca v. Cole*, 384 F.Supp.2d 757, 767 (D.N.J. 2005) (applying *McDonnell Douglas* burden shifting analysis to a wrongful termination claim.)

15, 2003 to the Complaint. The said letter (see p. 4 of this Opinion) clearly sets forth that Mr. Murcia engaged in a "consistent" pattern of impermissible activity by referring to Mr. Oh as an old man and f------ Korean.  The Court finds this is sufficient to meet our liberal pleading requirements. *See, Meadows v. Hudson County Bd. Of Elections*, 2006 U.S. Dist. LEXIS 64050, *28 n. 3 (D.N.J. 2006). *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996). Although the pleading is sufficient, it is unfair to penalize defendant who reasonably could have thought otherwise, and who did not explore his work environment claim during discovery. Based on the record, the Court is unable to decide whether the claim can withstand a motion for summary judgment. The Court permitted each party to supplement the record on the hostile work environment claim. However, plaintiff declined to submit any additional affidavits.  *See Swierkiewicz v. Sorema*, 534 U.S. 506 (2002); *Jenkins v. Blue Cross Mutual Hospital Insurance Inc.*, 538 F.2d 164, 167 (7th Cir.1976), *cert. denied,* 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976); *Sandom v. Travelers Mortg. Services, Inc.*, 752 F.Supp. 1240, 1246-1247 (D.N.J.1990).

      Unlike plaintiff, defendant provided a supplemental brief.  Defendant asserts that plaintiff's allegations are too remote and conclusionary to meet the severe and pervasive requirement for a hostile work environment claim.  See, *Swanson v. Northwestern Human Services Inc.*, 2006 U.S. Dist. LEXIS 83846 (E.D. Pa Dec. 12, 2006); *Shramban v. Aetna*, 262 F.Supp.2d 531 (E.D. Pa 2003) *aff'd* 115 Fed. Appx. 578, (3d Cir. 2004).  In *Shramban*, claims of discriminatory treatment were based solely on plaintiff's testimony regarding "continuou[s] derogatory comments [...] regarding her ethnicity and religion..." This also included mocking of her accent, and her "Russki way." 262 F.Supp.2d at 536. Also in *Swanson*, the conduct included grabbing of buttocks, request for dates, and increased criticism of his performance after he rebuffed her requests. *Id.* at *8-9.  The district court

dismissed the hostile work environment claim as insufficient to establish severe and pervasive harassment. 262 F.Supp.2d at 536.  Here, plaintiff seems to argue that the systematic second guessing of Oh's technical skills plus Mr. Murcia's ridicule is sufficient to show that a hostile work environment existed.  As noted above, according to plaintiff, Murcia referred to Oh as an old man, and evidently called him a  "f------g Korean" with some regularity.   These allegations are all uncorroborated as Mr. Oh  never complained to anyone at Engelhard about the slurs during the course of his employment[3].  Fairness requires that defendant be given an opportunity to flesh out these broad allegations and renew its application if appropriate. Accordingly, the Court will reserve on this aspect of the motion in order to allow defendant to propound interrogatories and take plaintiff's deposition in accordance with the terms set forth in the accompanying order.

|  |  |
|---|---|
| April 27, 2007 | *s/Peter G. Sheridan*<br>PETER G. SHERIDAN |

---

[3]At oral argument, the Court questioned the plaintiff's lawyer regarding whether he could corroborate the alleged impermissible conduct of Mr. Murcia.  He responded negatively; but he added (paraphrasing) "what should I have done, deposed the entire plant?"  Some reasonable discovery efforts would have been appropriate.